**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CARDINAL HEALTH, INC.,**

**Plaintiff,**

**v.**

**Civil Action 2:20-cv-5854**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**

**Defendant.**

## REPORT AND RECOMMENDATION

This case arises from an insurance coverage dispute. Plaintiff, Cardinal Health, Inc., on behalf of itself and its insured subsidiaries and affiliates named in underlying lawsuits stemming from the national opioid epidemic, including Cardinal Health 110, LLC (collectively "Cardinal Health"), filed a declaratory judgment action in an Ohio state court against its insurer, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). Cardinal Health seeks contract determinations and declarations concerning the insurance obligations of National Union for the defense and/or defense costs of underlying opioid lawsuits. National Union removed this state declaratory action to this Court (ECF No. 1) pursuant to 28 U.S.C. § 1441, on the basis of diversity jurisdiction, thereby asking the Court to proceed under the Declaratory Judgment Act, 28 U.S.C. § 2201. This matter is before the undersigned for a Report and Recommendation on Cardinal Health's Motion to Remand (ECF No. 17). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion to Remand be **GRANTED**.

## I. BACKGROUND

Cardinal Health, Inc. is a publicly-traded Ohio corporation headquartered in Franklin County, Ohio. Plaintiff's wholly-owned subsidiary, Cardinal Health 110, LLC, distributes wholesale pharmaceutical products, including prescription opioid medications, to licensed and registered pharmacies. National Union is a Pennsylvania corporation with its principal place of business in New York. National Union issued multiple commercial umbrella insurance policies to Cardinal Health covering the period of June 30, 1999, through June 30, 2004 (the "Policies").

At present, more than 3,000 lawsuits have been filed in federal and state courts across the country against companies, including Cardinal Health, that manufacture, distribute, and/or dispense prescription opioids (the "Opioid Litigation" or "Underlying Lawsuits"). The Opioid Litigation plaintiffs include governmental entities, Native American tribes, individuals, hospitals, unions, and other third-party healthcare payors (the "Opioid Plaintiffs"). Most federal cases have been consolidated into a coordinated, multi-district case pending in the United States District Court for the Northern District of Ohio, captioned *In re National Prescription Opiate Litigation*, Case No. 1:17-MD-284 (the "MDL").

In general, the Opioid Plaintiffs allege (among other things) that Cardinal Health, as a distributor, caused (or contributed to) the nation's opioid crisis by failing to detect or report suspicious or excessive orders of prescription opioids, failing to take appropriate steps to stop fulfillment of such orders, and failing to oppose allegedly improper conduct of other entities named as defendants in the Underlying Lawsuits. The Opioid Plaintiffs further allege that they expended substantial amounts of money to remedy or mitigate the harms attributable to Cardinal Health's conduct. They assert a wide variety of federal and state causes of action, many seeking to recover for increased payments, services, treatment, and/or care allegedly necessitated by the

opiate-related addictions, overdoses, hospitalizations, and deaths of those they serve (*i.e.*, residents, members, and patients).

Since 2018, Cardinal Health has sought coverage for the Opioid Litigation pursuant to the parties' Policies, and National Union has continually reserved the right to deny coverage. Dissatisfied with National Union's response, on October 7, 2020, Cardinal Health filed this declaratory action in the Ohio Court of Common Pleas for Franklin County, Ohio, seeking determinations of the parties' rights and obligations under the Policies, especially as to their disputed coverage and defense provisions. (*See* Compl. for Declaratory J., ECF No. 7.) Cardinal Health identifies seventeen cases selected from the voluminous Opioid Litigation (called "Exemplar Lawsuits") for which it specifically seeks defense and/or defense costs. (*Id.* at ¶¶ 15–59.)

On November 10, 2020, National Union removed this declaratory-judgment action to this Court in accordance with 28 U.S.C. §§ 1332 and 1441. (ECF Nos. 1, 1-1.) On December 10, 2020, Cardinal Health filed the subject Motion, asking this Court to decline to exercise jurisdiction and remand this action. Cardinal Heath does not dispute that this action falls within the Court's original jurisdiction, and the parties agree that the requirements of diversity jurisdiction are satisfied—the amount in controversy exceeds $75,000,[1] and the disputing parties have complete diversity of citizenship. *See* 28 U.S.C. § 1332. Nor does Cardinal Health allege a

[1] Cardinal Health alleges spending millions of dollars to date to defend the Opioid Litigation, which it alleges National Union should have covered. The requested declaration that National Union has a duty to reimburse these retrospective costs, as well as provide prospective defense in vast ongoing litigation, clearly satisfies the $75,000 minimum for diversity jurisdiction. *See Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (recognizing that in declaratory judgment actions "it is well established that the amount in controversy is measured by the value of the object of the litigation," or in other words, "the value of the consequences which may result from the litigation").

defect in the removal process. Rather, Cardinal Health asks this Court to refrain from exercising its otherwise valid subject-matter jurisdiction in favor of state jurisdiction over this case. National Union opposes remand, characterizing Plaintiff's filing of this action in state court as "forum shopping," and asserting that application of the relevant considerations to the facts of this case makes clear that this Court should exercise its discretion to retain this case.

## II. STANDARDS

A federal declaratory judgment claim is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201 (the "DJA" or "Act"). In relevant part, the Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Supreme Court has repeatedly emphasized the discretionary nature of the Act." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990) (citing, *inter alia*, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) ("The Supreme Court has indicated that this act 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants[.'] In passing the act, Congress 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'") (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–89 (1995)).

Of course, this Court may not "decline to entertain [this] action as a matter of whim or personal disinclination," but must exercise its judicial discretion under the Act "in the public interest." *Mercier*, 913 F.2d at 277. The United States Court of Appeals for the Sixth Circuit has delineated parameters for the exercise of this discretion. Specifically, a trial court must consider the following five factors (the "*Grand Trunk* factors") as a guide:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Additionally, consideration of the fourth factor involves analyzing the following three sub-factors:

> (1) Whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (citing *Flowers*, 513 F.3d at 560).

The relative weight of the five factors is to be determined by the facts of the case. *Id.*; *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) ("We have never assigned weights to the *Grand Trunk* factors when considered in the abstract, . . . and rightly so—the factors are not, of course, always equal."). These factors assist trial courts to reasonably assess the underlying principles of "efficiency, fairness and federalism" in its effort to reach a "useful and fair" result. *Hoey*, 773 F.3d at 759.

## III. ANALYSIS

### A. Applicability of the DJA

As a threshold matter, National Union correctly points out that had Plaintiff had filed this action at law for monetary damages, remand would be improper. *See Quackenbush v. Allstate*

*Ins. Co.*, 517 U.S. 706, 721, 730–731 (1996); *Gray v. Bush*, 628 F.3d 779, 784–85 (6th Cir. 2010); *Knowlton Constr. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-cv-0748, 2007 WL 4365690, at *3 (S.D. Ohio Dec. 13, 2007) ("The exercise of jurisdiction over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim."). But contrary to National Union's apparent suggestion, the fact that Cardinal Health opted to file a declaratory judgment action when it could have instead filed a damages claim does not demonstrate bad faith or somehow deprive the Court of its discretion to remand this action to state court. (*See* Def.'s Mem. in Opp'n, ECF No. 24 at PAGEID ## 4488, 4503-04.) Rather, the DJA plainly authorizes, but does not require, federal courts to act even when alternative relief, such as damages, is available. 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief could be sought*.") (emphasis added). The Court will not impute improper motivation to Cardinal Health where no evidence of such has been given. *Flowers*, 513 F.3d at 558.

Regardless, review of the Complaint reveals that Cardinal Health seeks declarations defining the Parties' respective rights and obligations under the Policies, including Defendant's obligations to provide coverage for ongoing and future defense of the Exemplar Lawsuits. This is exactly the kind of situation—proactively clarifying the disputed legal relationship of parties—envisioned by the DJA and state equivalents. *See Mercier*, 913 F.2d at 277 ("The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."); *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St. 3d 133, 136 (2007); *see also* 10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2751 (4th ed.) ("[The

remedy made available by the DJA] permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by . . . declaring in one action the rights and obligations of litigants.”). Accordingly, because this Court’s exercise of jurisdiction over this action is discretionary, the undersigned now considers the *Grand Trunk* factors.

## B. Application of the *Grand Trunk* Factors

### 1. Factors One and Two

The first two *Grand Trunk* factors ask “(1) whether the declaratory action would settle the controversy and (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.” *Cole’s Place*, 936 F.3d at 397. These factors are closely related and often considered together. *Flowers*, 513 F.3d at 557 (“Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue.”).

That Cardinal Health commenced this declaratory judgment action reflects its view that a declaratory judgment would settle the parties’ coverage disputes and clarify the legal relations at issue, and indeed, it concedes as much: “Here, the Court’s exercise of jurisdiction would settle the legal issues raised in the Complaint[.]” (Pl’s Reply, ECF No. 25, pp. 8–9.) Notwithstanding this concession, Cardinal Health argues that the state forum would be better: “Resolving the case in federal court will not settle the controversy or clarify the legal relations *any more than* if the matter proceeded in state court.” (Pl’s Mem. in Support, ECF No. 17, p. 12.) But Cardinal Health’s argument misses the mark as this Court’s analysis “does not compare state and federal court adjudication. Rather, it asks whether adjudication at the federal level would help to resolve the legal relations between the parties.” *Clifford v. Church Mut. Ins. Co.*, No. 2:13-CV-853, 2014

WL 4805473, at *3 (S.D. Ohio Sept. 26, 2014).

Moreover, because there exists no concurrent state-court litigation involving Cardinal Health and National Union regarding coverage under the Policies, this independent declaratory judgment action would settle the Parties' contractual disputes and clarify their legal relationship as to the defense of the Underlying Lawsuits. *See, e.g., Cole's Place*, 936 F.3d at 397–99 (upholding district courts' finding that first two *Grand Trunk* factors favored exercise of jurisdiction over the disputes between insurer and insured); *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 436–38 (6th Cir. 2018) (same). Thus, factors one and two weigh in favor of this Court's exercise of jurisdiction.

**2. Factor Three**

The third factor asks "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or 'to provide an arena for a race for *res judicata*.'" *Mass. Bay Ins. Co.*, 759 F. App'x at 438. The meaning of "procedural fencing" includes "a range of tactics that courts regard as unfair or unseemly." *Id.* This factor is primarily aimed at precluding jurisdiction in cases where a parallel state lawsuit exists—*i.e.*, "for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* The Sixth Circuit has repeatedly held that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.*

Here, the undersigned readily finds that neither party is using this declaratory action as a vehicle for "procedural fencing" or winning "a race for *res judicata*." Cardinal Health filed this declaratory judgment action in state court well after the Underlying Lawsuits were filed. National Union, an out-of-state defendant, then removed the action to this Court. As previously

addressed, the record contains no evidence suggesting that Cardinal Health filed in state court for an improper motive or unfair advantage; nor is there reason to believe that National Union removed this action with any improper motive or as an unfair tactic.[2] Thus, the undersigned finds this factor to be neutral.

**3. Factor Four**

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Cole's Place*, 936 F.3d at 399. In evaluating this factor, trial courts must consider three sub-factors centered around federalism concerns. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. *See also Wilton*, 515 U.S. at 283 (instructing courts to be concerned "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court"). Here, no such parallel state-court action exists. Rather, the Underlying Lawsuits involve injured parties suing Cardinal Health (the insured). National Union (the insurer) is not a party to these Underlying Lawsuits, and, significantly, liability issues in the Underlying Lawsuits are largely legally and factually distinct from the policy interpretation issues that are central to this declaratory judgment action. More specifically, the Underlying Lawsuits concern tort liability (or other statutory or common law violations) as

[2] Notably, though National Union now argues procedural fencing by Cardinal Health, National Union represented in its Notice of Removal that "Cardinal Health filed the Complaint seeking declaratory relief, and there is no credible concern over procedural fencing or a race for *res judicata*." (*See* ECF No. 1, at ¶ 24.)

contrasted with this action, which concerns insurance coverage disputes under the contracted Policies. Sub-factor one therefore weighs in favor of the Court's exercise of jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. States are generally considered to be "in a better position to resolve insurance issues governed by state law[; and when] there are novel issues of state law, this subfactor leans even more heavily against federal courts exercising jurisdiction." *Mass. Bay Ins. Co.*, 759 F. App'x at 440. National Union argues that this sub-factor weighs in its favor because (1) there are no factual issues involved in a parallel state-court action and (2) this action involves only routine matters. (Def.'s Mem. in Opp'n, ECF No. 24, pp. 19–20). The undersigned disagrees.

Though the second sub-factor as originally expressed in *Roumph*, 211 F.3d at 968, only listed "factual issues," the Sixth Circuit has repeatedly considered whether the state court is a better forum to evaluate both factual *and* legal issues. *See, e.g.*, *Cole's Place*, 936 F.3d at 401; *Mass. Bay Ins. Co.*, 759 F. App'x at 440; *Flowers*, 513 F.3d at 560. This Court recognizes that under Ohio law, an insurance policy is a contract for which interpretation is a matter of law, not fact. *Sauer v. Crews*, 140 Ohio St. 3d 314, 317 (2014). Additionally, it is settled Ohio law "that the insurer has a duty to defend a suit against the insured so long as the suit is 'potentially or arguably' covered based on the allegations in the pleadings." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St. 3d 177, 180 (1984). The uncertainty here arises in the determination of which, if any, Opioid Litigation claims are "potentially or arguably" covered by the Policies, thereby triggering National Union's defense obligation. It is on this central issue that the state court has the advantage in processing this case.

There is a dearth of Ohio caselaw in this relatively new, actively developing arena of

insurance-coverage claims arising from opioid lawsuits. Review of the state-court cases decided thus far reflect that parties are pursuing alternative theories of interpretation, and trial courts interpreting such insurance-contract provisions have reached inconsistent results. *Compare Cincinnati Ins. Co. v. Discount Drug Mart, Inc.*, No. CV-19-913990, 2020 WL 6706791 (Ohio Com. Pl. Sept. 9, 2020) (finding a duty to defend existed) *with Acuity v. Masters Pharm., Inc.*, No. A- 1701985, 2019 WL 9698564 (Ohio Com. Pl. Feb. 1, 2019) (denying a duty to defend existed). These cases are currently on appeal—the former before the Ohio Eighth District Court of Appeals and the latter before the Ohio Supreme Court (having already been reversed by the Ohio First District Court of Appeals). *See Cincinnati Ins. Co. v. Discount Drug Mart, Inc.,* Case No. CA-20-110151; *Acuity v. Masters Pharm., Inc.*, Case No. 2020-1134 (allowing appeal of the Ohio First District Court of Appeals, Case No. C-190176, 2020 WL 3446652). In these recent opioid-related insurance cases, in Ohio and across the country, insured opioid manufacturers, wholesale distributors (like Cardinal Health), and retailors are arguing for defense coverage of the MDL and other opioid litigation (like the Exemplar Lawsuits). Contested issues include whether the underlying opioid litigation alleges covered "damages," whether the damages are "because of bodily injury," and whether there exists a covered "occurrence." Many of these same issues are at play in the Parties' declaratory judgment action. Consideration of such issues, as well as legal theories unique to the Parties' Policies under Ohio law, are better addressed by Ohio courts. Therefore, the Court finds that sub-factor two weighs in favor of remand.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has "often observed that states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the

public policies that form the foundation of such regulation." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC,* 495 F.3d 266 (6th Cir. 2007) (internal citations omitted). It is clear that this action implicates Ohio's interests in protecting residents—not only through the regulation of insurance but also in the state's response to the opioid epidemic. Additionally, this Court recognizes the important state interest in having uniform application of Ohio law to similarly-situated parties. *See Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co.*, No. 4:20-CV-1275, 2021 WL 274318, at *1 (N.D. Ohio June 10, 2020) ("[D]iffering interpretations of Ohio contract law by different courts threaten to undermine the uniform application of that law to similarly situated litigants."). Although the pending Ohio cases involve different parties under different insuring agreements, both the instant action and those Ohio state-court cases involve opioid distributors, in a similar position as Cardinal Health, seeking defense from their insurers under contracts with materially-similar language, for cases that are part of the Exemplar Lawsuits identified by Cardinal Health.

Yet another consideration within the third sub-factor is whether federal common or statutory law would favor a federal resolution of the case. *Flowers*, 513 F.3d at 560. The parties' dispute involves only state substantive law. But where, as here, this Court has diversity jurisdiction, federal courts have a significant interest in providing a neutral forum for out-of-state parties. *See Gray v. Bush*, 628 F.3d 779, 785-786 (6th Cir. 2010) (recognizing that diversity suits implicate a federal interest in providing a neutral forum "for important disputes where state courts might favor, or be perceived as favoring, home-state litigants"). The undersigned finds, however, that under the circumstances presented here, Ohio's interests outweigh this Court's interest in providing a neutral forum.

In sum, this case is neither dependent on factual determinations in an underlying, parallel

state-court action (thus weighing in favor of remand) nor simply applying straightforward, well-established questions of state insurance law (thus weighing against remand). In addition, materially-similar insurance coverage actions are already proceeding in Ohio, and Ohio has a strong interest in consistently defining its insurance law, especially as it applies to the developing landscape of opioid litigation. Thus, considering the sub-factors together, because proceeding in the federal forum with this case presents significant concerns of state encroachment, the undersigned finds that factor four weighs in favor of remand.

**4. Factor Five**

The fifth factor asks "whether there is an alternative remedy which is better or more effective than federal declaratory relief." *Cole's Place*, 936 F.3d at 401. Because this case originated as a state declaratory judgment action, it is clear that an alternative remedy exists. Thus, the remaining question is whether the remedy is "better or more effective" than this Court can provide.

The Sixth Circuit recognizes that having a state declaratory relief action available as an alternative is not automatically better; rather, "our inquiry on this factor must be fact-specific." *Flowers*, 513 F.3d at 562. As discussed above, this case involves only matters of state insurance law. Federal courts sitting in diversity regularly apply state law. And when state legal standards are direct and clear, the federal forum can provide an equal (certainly not inferior) declaratory remedy as the state forum. *See Flowers*, 513 F.3d at 562 ("[G]iven that [state court] precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court was a clearly inferior forum to resolve the issue."). But where, as here, the state substantive law is undeveloped or unsettled, federal courts can and do err in applying state law. *See Scott v. Bank One Tr. Co.*, 62 Ohio St. 3d 39, 42–43 (1991) ("The state's sovereignty is

unquestionably implicated when federal courts construe state law. If the federal court errs, it applies law other than Ohio law, in derogation of the state's right to prescribe a 'rule of decision.' . . . The danger is scarcely theoretical. Federal courts acknowledge that they frequently err in applying state law that is unclear or unsettled.") Consequently, where the governing state substantive law is undeveloped or unsettled, state courts are better positioned to determine and apply the proper legal standards. *See, e.g.*, *Royal Surplus Lines Ins. Co. v. U.S. Four, Inc.*, 614 F. Supp. 2d 875, 879 (S.D. Ohio 2007) (finding that a state declaratory judgment action would provide "a better and more effective alternative remedy" for case involving an unsettled issue under Ohio law). Finally, nothing in the record reflects that the state court is unable to define its own law in a fair and impartial manner. *Cf. Liberty Mut. Fire Ins. Co. v. Bohms*, 490 F. App'x 721, 727 (6th Cir. 2012) (upholding district court conclusion that fifth factor weighed against exercising jurisdiction where issues involved questions of state law only and the state court's "ability to resolve the parties' dispute fairly and impartially [was] not called into question").

In summary, because this case involves issues of developing, unsettled state law, the undersigned concludes that an Ohio declaratory judgment action would provide a better and more effective remedy. Factor five therefore weighs in favor of remand.

**5. Balancing the Factors**

This case presents a close call. As discussed above, the undersigned finds that *Grand Trunk* factors one and two weigh in favor of exercising jurisdiction, factor three is neutral, and factors four and five weigh against exercising jurisdiction. On balance, the undersigned concludes that the most efficient, useful, and fair result would be for this Court to decline jurisdiction and allow the case to proceed in state court. In reaching this determination, the undersigned is most persuaded by the novel nature of these type of claims, the lack of developed

state-court guidance in this area, and the pendency of other materially-related state-court actions addressing similar contractual issues in opioid-related declaratory judgment actions. *Cf. Hoey*, 773 F.3d at 760 ("A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law[.]"); *Mass. Bay Ins. Co.*, 759 F. App'x at 443. ("Although other courts may have reached a different result, the district court did not abuse its substantial discretion in declining jurisdiction.").

## IV. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that Cardinal Health's Motion to Remand (ECF No. 17) be **GRANTED** and that this action be **REMANDED** in its entirety to the Court of Common Pleas for Franklin County, Ohio.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                              */s/Chelsey M. Vascura*
                                              CHELSEY M. VASCURA
                                              UNITED STATES MAGISTRATE JUDGE