# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

------------------------------------------------------------x

CARDINAL HEALTH, INC.,           :     Case No. 2:20-cv-05854

               **Plaintiff**,        :     **Judge Edmund A. Sargus**
       **v.**                        **Magistrate Judge Chelsey M. Vascura**

                               :

NATIONAL UNION FIRE INSURANCE    :
COMPANY OF PITTSBURGH, PA,

                               :

             **Defendant**.      :
------------------------------------------------------------x

## NATIONAL UNION'S OBJECTION TO THE MAGISTRATE'S REPORT
## AND RECOMMENDATION ON CARDINAL HEALTH'S
## <u>MOTION TO REMAND TO STATE COURT</u>

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................................................1

BACKGROUND ........................................................................................................5

     A.    The Opioid Lawsuits................................................................................5

     B.    The Coverage Claims..............................................................................6

     C.    The Remand Motion ...............................................................................7

ARGUMENT ...........................................................................................................12

    I.    GRAND TRUNK FACTOR 3 WEIGHS HEAVILY IN FAVOR OF
        RETAINING JURISDICTION.................................................................13

     A.    Because National Union Did Not Engage In Procedural Fencing,
          Grand Trunk Factor 3 Favors The Exercise Of Jurisdiction.....................13

     B.    The Third Grand Trunk Factor Should Weigh Heavily In Favor of
          Jurisdiction, Given Cardinal Health's Artful Pleading .............................16

    II.    THE REPORT AND RECOMMENDATION INCORRECTLY
        CONCLUDES THAT THIS CASE WOULD CAUSE FRICTION
        BETWEEN STATE AND FEDERAL COURTS.................................................18

    III.    THE STATE COURT WOULD NOT PROVIDE A BETTER OR MORE
         EFFECTIVE ALTERNATIVE REMEDY.........................................................23

    IV.    BALANCING THE GRAND TRUNK FACTORS REQUIRES DENIAL
         OF THE MOTION TO REMAND ....................................................................24

CONCLUSION.........................................................................................................25

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Absalom v. Hess Corp.,*
No. 2:12-CV-394, 2012 WL 12942604 (S.D. Ohio Nov. 29, 2012) ......................................12

*Acuity v. Masters Pharm., Inc.,*
Case No. 2020-1134 (Ohio) ...........................................................................................21

*Acuity v. Masters Pharm., Inc.,*
No. C-190176, 2020 WL 3446652 (Ohio Com. Pl. Feb. 1, 2019),
*appeal allowed,* 159 N.E.3d 277 (Ohio 2020) .........................................................................21

*Canty v. Comm'r of Soc. Sec.,*
No. 2:15-CV-2221, 2016 WL 5957679 (S.D. Ohio Oct. 14, 2016) (Sargus, J.) ..............12, 13

*Cincinnati Ins. Co. v. Discount Drug Mart, Inc.,*
No. CV-19-913990, 2020 WL 6706791 (Ohio Com. Pl. Sept. 9, 2020) ................................21

*Cincinnati Ins. Cos. v. United Rentals, Inc.,*
No. 1:08cv216, 2008 WL 11350340 (S.D. Ohio May 14, 2008) .....................................14, 15

*Clifford v. Church Mutual Insurance Co.,*
No. 2:13-CV-853, 2014 WL 4805473 (S.D. Ohio Sept. 26, 2014) ...................................14, 22

*Equity Plan. Corp. v. Westfield Ins. Co.,*
No. 1:20-CV-01204, 2020 WL 5909806 (N.D. Ohio Oct. 6, 2020)......................................22

*Express Packaging of Oh, Inc. v. American States Insurance Co.,*
No. 5:09 CV 2318, 2010 WL 11667915 (N.D. Ohio Jan. 13, 2010)......................................19

*Fayetteville Perry Local Sch. Dist. v. Reckers,*
892 F. Supp. 193 (S.D. Ohio 1995) .......................................................................................17

*Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,*
746 F.2d 323 (6th Cir.1984) ........................................................................................1

*Jones v. Cincinnati Ins. Co.,*
No. 96 CA 43, 1999 WL 420845 (Ohio Ct. App. June 21, 1999) .........................................20

*Knowlton Constr. Co. v. Liberty Mut. Ins. Co.,*
No. 2:07-CV-0748, 2007 WL 4365690 (S.D. Ohio Dec. 13, 2007)......................................16

*Murray Energy Holdings Co. v. Bloomberg, L.P.,*
No. 2:15-CV-2845, 2016 WL 3355456 (S.D. Ohio June 17, 2016)......................................12

*NCMIC Ins. Co. v. Smith,*
375 F. Supp. 3d 831 (S.D. Ohio 2019) .......................................................... *passim*

*Northland Ins. Co. v. Stewart Title Guar. Co.,*
  327 F.3d 448 (6th Cir. 2003) .......................................................................................13, 14

*Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.,*
  990 F.2d 865 (6th Cir. 1993) ................................................................................................20

*PICA Corp. v. Clarendon Am. Ins. Co.,*
  No. 2:07-CV-1126, 2008 WL 2872274 (S.D. Ohio July 22, 2008),
  *aff'd,* 339 F. App'x 540 (6th Cir. 2009).......................................................................20, 21

*Quackenbush v. Allstate Ins. Co.,*
  517 U.S. 706 (1996)................................................................................................................16

*Royal Surplus Lines Ins. Co. v. U.S. Four, Inc.,*
  614 F. Supp. 2d 875 (S.D. Ohio 2007) ...............................................................................15

*S2 Yachts, Inc. v. ERH Marine Corp.,*
  No. 20-1479, 2021 WL 1943371 (6th Cir. May 14, 2021)...................................................2, 14

*Scottsdale Ins. Co. v. Flowers,*
  513 F.3d 546 (6th Cir. 2008) ...................................................................................... *passim*

*Sophia's Cure Inc. v. AveXis, Inc.,*
  No. 2:16-CV-865, 2017 WL 4541449 (S.D. Ohio Oct. 10, 2017) ..........................................17

*Travelers Indemnity Co. v. Bowling Green Professional Associates, PLC,*
  495 F.3d 266 (6th Cir.2007) ...............................................................................................15

*United Specialty Ins. Co. v. Cole's Place, Inc.,*
  No. 3:17-cv-00326-TBR, 2018 WL 1914731 (W.D. Ky. Apr. 23, 2018) ..............................15

*United Specialty Insurance Co. v. Cole's Place, Inc.,*
  936 F.3d 386 ( 6th Cir. 2019) ..............................................................................................15

*Vogel v. U.S. Office Prods. Co.,*
  258 F.3d 509 (6th Cir. 2001) ...............................................................................................12

*W. Am. Ins. Co. v. Prewitt,*
  208 F. App'x 393 (6th Cir. 2006) ........................................................................................2, 14

*W. World Ins. Co. v. Hoey,*
  773 F.3d 755 (6th Cir. 2014) .................................................................................17, 18, 20, 24

iii

Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), by and through undersigned counsel, respectfully submits this objection to the Magistrate Judge's June 7, 2021 Report and Recommendation (ECF 27) ("Report and Recommendation"), which recommends that this Court grant Plaintiff Cardinal Health Inc.'s Motion to Remand to State Court ("Remand Motion").

## SUMMARY OF ARGUMENT

In this insurance coverage action, Cardinal Health seeks declarations requiring National Union to pay years of already-incurred costs, as well as future costs, for the defense of thousands of lawsuits across the country that allege Cardinal Health was complicit in fostering a nationwide opioid addiction crisis.  There is no dispute that National Union properly removed this action from state court under 28 U.S.C. § 1441(a), nor that the Court may exercise jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) and the Declaratory Judgment Act, 22 U.S.C. § 2201(a).  Report and Recommendation at 2-3.  However, in what it describes as a "close call," the Report and Recommendation erroneously concludes that this Court should exercise discretion under the Declaratory Judgment Act to decline jurisdiction, and remand the matter to state court.

The Report and Recommendation rejects Cardinal Health's principal argument for remand – a purported presumption against federal courts hearing declaratory judgment actions involving insurance contracts – and instead analyzes the Remand Motion under the five factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984) ("*Grand Trunk*"), as required by Sixth Circuit precedent.  Applying the *Grand Trunk* factors, the Report and Recommendation correctly concludes that the first two factors weigh in favor of exercising federal jurisdiction, because Cardinal Health's action is independent of any underlying state court proceeding, and Cardinal Health's action would settle the controversy between the parties.  Report and Recommendation at 7-8.  But the Report and

Recommendation contains several errors concerning its analysis of the remaining *Grand Trunk* factors, to which National Union objects.

*First,* National Union **objects** to the Magistrate Judge's determination that the third *Grand Trunk* factor was "neutral."  The third factor asks the Court to consider whether the party seeking federal declaratory relief engaged in procedural fencing.  Cardinal Health conceded, and the Magistrate Judge correctly held, that National Union had not removed the case to engage in procedural fencing.  But the Report and Recommendation incorrectly weighs the third factor as neutral, without citing authority that would permit it to do so.  In fact, the weight of authority in the Sixth Circuit and this Court demonstrates that in cases where the party seeking federal declaratory relief is not engaged in procedural fencing, this factor weighs *in favor of exercising jurisdiction*, and is not simply neutral.  *See, e.g.*, *S2 Yachts, Inc. v. ERH Marine Corp.*, No. 20-1479, 2021 WL 1943371, at *7 (6th Cir. May 14, 2021); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 559, 563 (6th Cir. 2008); *W. Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 398 (6th Cir. 2006)*; NCMIC Ins. Co. v. Smith*, 375 F. Supp. 3d 831, 843 (S.D. Ohio 2019) (Sargus, J.).  While a small number of courts have accorded the third factor "neutral" weight, those decisions have come in matters involving a parallel, underlying state case presenting the opportunity for procedural fencing – an opportunity not present here.  The Magistrate Judge thus erred by not weighing the third factor in favor of exercising jurisdiction.  Had the Magistrate Judge properly weighed the third factor, the recommendation should have been to accept jurisdiction, even assuming the fourth and fifth factors weighed against it, making it a "close call" in the other direction.

**[Argument I.A.]**

*Second,* National Union **objects** to the Magistrate Judge's conclusion that Cardinal Health's decision to plead around a damages claim should have no impact on whether this Court

exercises its discretion to accept jurisdiction.  The Report and Recommendation correctly notes that "had Plaintiffs filed this action at law for monetary damages, remand would be improper." Report and Recommendation at 5 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721, 730-31 (1996)).  But the Report and Recommendation misses the point when it concludes that "the fact that Cardinal Health opted to file a declaratory judgment action when it could have instead filed a damages claim does not demonstrate bad faith or somehow deprive the Court of its discretion to remand this action to state court."  Report and Recommendation at 6.  The issue is not that Cardinal Health "could have" pled a claim for damages, but that it did plead a damages claim in all but name.  The Complaint pleads all the elements of a breach of contract claim for already-incurred defense costs, omitting only a separate cause of action for those damages.  Such artful pleading might not deprive the Court of the discretion to refuse jurisdiction, but it should weigh in favor of the exercise of jurisdiction.  The failure to give it such weight is an invitation for future plaintiffs to use the mechanism of declaratory relief to evade federal court jurisdiction.  [**Argument I.B.**]

*Third,* National Union **objects** to the Magistrate Judge's finding that the fourth *Grand Trunk* factor weighs against the exercise of jurisdiction.  Factor 4 considers "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction."  *NCMIC*, 375 F. Supp. 3d at 838.  Here, there is no possibility of encroaching on state jurisdiction because there is no parallel state court action.  The Report and Recommendation acknowledges there is no parallel state court action, yet still finds that retaining the action would risk encroachment on state jurisdiction.  It does this by suggesting that insurance coverage claims arising out of opioid lawsuits are an "actively developing" area of law in Ohio that should be decided by a state court.  But while liability arising from the distribution

of opioids is an actively developing area of law, the legal issues bearing on coverage and the insurance policies at issue in this case are not novel. Liability policies like those at issue here have been interpreted by Ohio and federal courts alike many times. Even in the context of opioid lawsuits there is significant Ohio case law to guide this Court, including a forthcoming opinion from the Ohio Supreme Court that will address some of the issues that the Magistrate Judge characterized as "undeveloped." Further, while the Report and Recommendation focuses on Ohio's interests in this litigation, this case involves nationwide claims, including many filed in federal court, and underlying issues of federal law. The Report and Recommendation should have weighed those federal-law and national touch points in the analysis of the fourth *Grand Trunk* factor, but fails to address them. [**Argument II.**]

*Fourth*, National Union **objects** to the Magistrate Judge's finding that the fifth *Grand Trunk* factor, which asks whether there is a better and more effective alternative remedy, weighs against the exercise of jurisdiction. The Magistrate Judge's analysis of this factor relies again on the concern that the applicable Ohio law is not settled. It thus suffers from the same flaws noted above, and in effect double-counts the impact of that concern. In no sense would a state court declaratory judgment action be a better or more effective remedy than a proceeding in this Court, and at best this factor should have been considered neutral. [**Argument III.**]

*Finally*, National Union **objects** to the Magistrate Judge's overall balancing of the *Grand Trunk* factors. The "close call" should be reversed, and this Court should deny the motion to remand. [**Argument IV.**]

## BACKGROUND

A.    The Opioid Lawsuits[1]

Cardinal Health is a defendant in over 3,000 lawsuits stemming from its alleged contribution to the United States' ongoing opioid epidemic (the "Opioid Lawsuits").  Report and Recommendation at 2.  These lawsuits span the entire country.  Cardinal Health has been sued "in 51 state or federal jurisdictions" by "governmental entities" at both the state and local level, as well as by "Native American tribes, individuals, hospitals, unions, and other third-party healthcare payors" across multiple states.  Plaintiffs' Complaint for Declaratory Judgment ("Compl.") (ECF 1-2) ¶¶ 13, 15; Report and Recommendation at 2.  Most cases at the federal level have "been consolidated into a coordinated, multi-district case pending in the United States District Court for the Northern District of Ohio, captioned *In re National Prescription Opiate Litigation*, Case No. 1:17-MD-284 (the 'MDL')."  Report and Recommendation at 2.  In addition to the MDL, "there are numerous state court cases pending, . . . including cases filed in the state courts of Alaska, Illinois, New York, Pennsylvania, Texas, and West Virginia."  Compl*.* ¶ 13.

The Opioid Lawsuits allege that Cardinal Health and other opioids distributors and manufacturers betrayed their "duties" to prevent the diversion and misuse of opioids "through a persistent course of fraudulent and illegal misconduct, in order to profiteer from the plague they knew would be unleashed."  Complaint Ex. 4 (State of New York Complaint) (ECF 1-8) ¶ 1. The plaintiffs in the Opioid Lawsuits "assert a wide variety of federal and state causes of action, many seeking to recover for increased payments, services, treatment, and/or care allegedly necessitated by the opiate-related addictions, overdoses, hospitalizations, and deaths of those they serve (*i.e.*, residents, members, and patients)."  Report and Recommendation at 2-3.

---

[1]    National Union disputes many of the Complaint's allegations, but accepts them for purposes of adjudicating the Remand Motion.

Cardinal Health has settled at least three cases for a total of $86 million, including cases brought by Summit and Cuyahoga Counties.  Memorandum in Opposition to Cardinal Health Inc.'s Motion to Remand to State Court ("Remand Opposition") (ECF 24) at 5.

B.    The Coverage Claims

The Complaint alleges that National Union issued commercial general liability umbrella insurance policies to Cardinal Health from June 30, 1999 through June 30, 2004.  Compl. ¶¶ 1, 61.  On June 18, 2018, Cardinal Health first noticed the Opioid Lawsuits under the National Union policies.  *Id.* ¶ 60.  It did not tender its claims to any particular policy at the time, and indeed it still has not, alleging in its Complaint that "subject to any claims or arguments made by National Union or developments in this case or in the Opioid [Lawsuits], Cardinal Health *intends* to select the National Union 2000-2001 Policy. . . ."  *Id.* ¶ 87 (emphasis supplied).  According to the Complaint, National Union has "reserved the right to deny coverage."  Report and Recommendation at 3.

"Dissatisfied with National Union's response," Cardinal Health filed this declaratory judgment action in the Ohio Court of Common Pleas for Franklin County, Ohio on October 7, 2020.  Report and Recommendation at 3.  Cardinal Health "seeks defense and/or defense costs" in at least seventeen Opioid Lawsuits (the "Exemplar Lawsuits"), including the settled actions and a number of federal court actions that are part of an ongoing multidistrict litigation ("MDL") pending before Judge Polster.  *Id.*; Compl. ¶¶ 15-59.  Among the declarations Cardinal Health seeks is a declaration that National Union "must defend Cardinal Health or pay its defense costs, on both a retrospective and a prospective basis in the Exemplar Lawsuits, including Cardinal Health's defense costs incurred in the MDL."  Compl. ¶ 3.  Cardinal Health specifically requests a declaration that "all of the defense costs incurred by Cardinal Health in the MDL are reimbursable as defense costs attributable to the [Summit County and Cuyahoga County]

- 6 -

lawsuits, up to the date such lawsuits were finally resolved by settlement" or "in the event that all such defense costs are not deemed to be attributable to the [Summit County and Cuyahoga County] lawsuits, a declaration as to such defense costs that are so attributable." *Id.* at 34.

      C.      <u>The Remand Motion</u>

National Union timely removed the action on November 10, 2020, and Cardinal Health moved to remand on December 10, 2020. Report and Recommendation at 3. Cardinal Health did not dispute that removal was proper, or that this action falls within the Court's original diversity jurisdiction. *Id.* at 3-4. Cardinal Health nevertheless asked the Court to "refrain from exercising its otherwise valid subject-matter jurisdiction." *Id.* at 4.

In urging this Court to decline jurisdiction, Cardinal Health's principal argument was that "[t]he presumption in the Sixth Circuit is that states should resolve insurance coverage issues when possible." Cardinal Health, Inc.'s Motion to Remand to State Court ("Remand Motion") (ECF 17) at 5. Cardinal Health treated this so-called "presumption" as one that would obviate the need to consider anything else. *Id.* at 5-11. Only after making its presumption argument did Cardinal Health attempt to explain why "the five factors laid out in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984), and the sub-factors from *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000), also support declining jurisdiction here." *Id.* at 2.

The five *Grand Trunk* factors are:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue ;

(3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for res judicata;

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

- 7 -

(5) whether there is an alternative remedy which is better or more effective.

*Flowers*, 513 F.3d at 554 (internal quotations omitted); *see also* Report and Recommendation at 5 (listing the factors).  Three sub-factors considered in connection with the fourth factor are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560; *see also* Report and Recommendation at 5 (listing sub-factors).

When it finally addressed the *Grand Trunk* factors, Cardinal Health argued that the first two factors "do not support exercising jurisdiction" because "a federal forum provides no added benefit."  Remand Motion at 12.  Cardinal Health asserted that the third factor was neutral because neither party has engaged in procedural fencing (conceding that National Union had not done so).  *Id.* at 13.  Addressing the fourth and fifth *Grand Trunk* factors, Cardinal Health recycled its presumption argument, asserting that maintaining this action would increase friction between state and federal courts, and an action in state court would be a superior remedy, because this case involves an Ohio insured and some underlying Ohio plaintiffs; it potentially implicates "state public policy of regulating insurance contracts"; and it requires interpretation of insurance contracts under Ohio law.  *Id.* at 13-16.

On January 14, 2021, National Union filed its Remand Opposition.  National Union argued that the presumption put forth by Cardinal Health simply does not exist, noting that "the Sixth Circuit *requires* that district courts engage in a reasoned analysis of whether issuing a declaration would be useful and fair by applying the *Grand Trunk* factors."  Remand Opposition at 10 (emphasis in original) (internal quotations omitted).  National Union then explained why

each of the *Grand Trunk* factors favors retention of jurisdiction. National Union pointed out that Cardinal Health posed the wrong question in analyzing the first two *Grand Trunk* factors. The purpose of those factors is not to "compare" state and federal court adjudication, but only to determine whether the action would fully resolve the controversy and clarify the relationship between the parties. *Id.* at 13-14 (internal quotations omitted). With regard to the third factor, National Union argued that, if the Court finds that National Union did not engage in procedural fencing, the factor is not neutral but should weigh in favor of exercising jurisdiction. *Id.* at 16. National Union also pointed out that the Complaint "disguised a breach of contract claim as a request for declaratory relief," arguing that such artful pleading should weigh in favor of accepting jurisdiction. *Id.* at 16-17. National Union noted that had Cardinal Health pled a cause of action for damages, the exercise of federal jurisdiction would have been mandatory, but did not argue that Cardinal Health's artful pleading created mandatory jurisdiction. *Id.* at 16.

Turning to the fourth *Grand Trunk* factor, National Union noted in the first instance that "[a] key concern with the fourth factor is whether there is a parallel state court proceeding," and that the absence of such a proceeding should control, citing to precedent from the Sixth Circuit and this Court. *Id.* at 18. National Union then listed myriad reasons the three sub-factors should not lead the Court to conclude that this action would create friction with, or subvert the jurisdiction of, the state court: there is no parallel state court action; this is a case about contract interpretation (not Ohio insurance regulatory matters), an assignment federal courts routinely undertake; the interests of multiple jurisdictions besides Ohio are at play; and the Opioid Lawsuits raise federal law claims. *Id.* at 19-20. Considering the fifth *Grand Trunk* factor, National Union explained that multiple courts in this Circuit have rejected the notion that a state court declaratory judgment action is necessarily a better remedy than one in federal court, even

in an insurance contract case, and that Cardinal Health effectively asks this Court to find that it is an inferior forum.  *Id*. at 22.

On January 28, 2021, Cardinal Health filed a reply in support of remand.  Reply Memorandum in Support of Cardinal Health, Inc.'s Motion to Remand to State Court ("Remand Reply") (ECF 25).  The Remand Reply presents Cardinal Health's "presumption" argument in another form, arguing that the fourth *Grand Trunk* factor should govern and dictates remand, because "[p]rinciples of comity and federalism outweigh all other considerations under the *Grand Trunk* analysis."  Remand Reply at 8.

On June 7, 2021, the Magistrate Judge issued the Report and Recommendation.  The Report and Recommendation first addresses and declines to accept what it characterizes as National Union's "apparent suggestion" that "the fact that Cardinal Health opted to file a declaratory judgment action when it could have instead filed a damages claim . . .demonstrate[s] bad faith or somehow deprive[s] the Court of its discretion to remand this action to state court." Report and Recommendation at 6-7.  The Report and Recommendation states that the "Court will not impute improper motivation to Cardinal Health where no evidence of such has been given," and concludes that "this Court's exercise of jurisdiction over this action is discretionary." *Id*.

As an initial matter, the Magistrate Judge appears to have accepted National Union's position that the so-called presumption exercising jurisdiction over declaratory judgment actions involving state insurance law does not exist, because the Report and Recommendation does not reference, let alone credit, Cardinal Health's presumption argument.  The Report and Recommendation also agrees with National Union's position on the first two *Grand Trunk* factors, holding that they favor retention of jurisdiction because this action indeed would settle

- 10 -

the controversy and clarify the parties' legal relations.  Report and Recommendation at 7-8.  The

Report and Recommendation goes on to find that the third *Grand Trunk* factor is "neutral,"

according it no weight, on the basis that there was no evidence of procedural fencing on either

party's part.  *Id.* at 8-9.

When addressing the fourth *Grand Truck* factor, the Report and Recommendation does

not separately consider "whether the use of a declaratory judgment action would increase friction

between our federal and state courts and improperly encroach upon state jurisdiction," before

moving to an analysis of the three sub-factors.  The Report and Recommendation agrees with

National Union's position that the first sub-factor weighs in favor of exercising jurisdiction,

given there is no parallel state court action; National Union is not a party to the Opioid Lawsuits;

and the issues in the Opioid Lawsuits are "legally and factually distinct from the policy

interpretation issues that are central to this declaratory judgment action."  *Id.* at 9-10.

However, the Report and Recommendation concludes that the second and third sub-

factors favor remand.  Considering "which court, federal or state, is in a better position to resolve

the issues in the declaratory action," the Report and Recommendation concludes that there is a

"dearth of Ohio caselaw in th[e] relatively new, actively developing arena of insurance-coverage

claims arising from opioid lawsuits," making the state court a better forum for resolving legal

issues.  *Id.* at 10-11 (internal citation omitted).  Considering whether "the issue in the federal

action implicates important state policies and is, thus, more appropriately considered in state

court," the Report and Recommendation states that this action "implicates Ohio's interests in

protecting residents – not only through the regulation of insurance but also in the state's response

to the opioid epidemic."  *Id.*  at 11-12 (internal citation omitted).  While the Report and

Recommendation acknowledges the "significant interest" federal courts have in "providing a

neutral forum for out-of-state parties," it concludes that those interests do not outweigh Ohio's interests. *Id.* at 12-13.  The Report and Recommendation does not address the federal law issues connected with the Opioid Lawsuits, nor acknowledge the implications of the fact that those lawsuits are nationwide in scope.

Examining the final *Grand Trunk* factor, the Report and Recommendation reiterates its determination that "where the governing state substantive law is undeveloped or unsettled, state courts are better positioned to determine and apply the proper legal standards," and finds that the fifth factor favors remand. *Id.* at 14.  Balancing all five factors, the Report and Recommendation observes that "[t]his case presents a close call." *Id.*  Ultimately, the Report and Recommendation urges remand, citing "the novel nature of these types of claims, the lack of developed state-court guidance in this area, and the pendency of other materially-related state-court actions addressing similar contractual issues in opioid-related declaratory judgment actions." *Id.* at 14-15.

## ARGUMENT

"When a party objects to a magistrate judge's report and recommendation on a dispositive matter, the district judge 'must determine de novo any part of the magistrate judge's disposition that has been properly objected to.'" *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *2 (S.D. Ohio June 17, 2016) (quoting Fed. R. Civ. P. 72(b)(3)); *see also Absalom v. Hess Corp.,* No. 2:12-CV-394, 2012 WL 12942604, at *4 (S.D. Ohio Nov. 29, 2012).  A motion to remand is a dispositive motion for these purposes. *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001); *Murray Energy Holdings*, 2016 WL 3355456, at *1-2 (rejecting the Magistrate Judge's Report and Recommendation in part to deny the motion to remand).  This Court must therefore "conduct[] a de novo review of those parts of the Report and Recommendation to which [National Union] objects." *Canty v.*

*Comm'r of Soc. Sec.*, No. 2:15-CV-2221, 2016 WL 5957679, at *1 (S.D. Ohio Oct. 14, 2016) (Sargus, J.).

## I. *GRAND TRUNK* FACTOR 3 WEIGHS HEAVILY IN FAVOR OF RETAINING JURISDICTION.

### A. Because National Union Did Not Engage In Procedural Fencing, *Grand Trunk* Factor 3 Favors The Exercise Of Jurisdiction.

The Magistrate Judge found that "neither party is using this declaratory action as a vehicle for 'procedural fencing' or winning 'a race for *res judicata*,'" and that there was no "reason to believe that National Union removed this action with any improper motive or as an unfair tactic." Report and Recommendation at 8-9. Based on those findings, the Magistrate Judge, without citing any authority, held the factor "to be neutral," *id.* at 9, thus giving the third *Grand Trunk* factor no weight at all. Failing to attribute any weight to the third factor was an error.

Where the party asserting jurisdiction has not engaged in procedural fencing, the weight of authority dictates that the third factor is not neutral, but instead weighs in favor of the exercise of jurisdiction, particularly where, as here, there is no underlying state court action that could provide more complete relief. This Court and the Sixth Circuit have held repeatedly that the third factor should weigh in favor of accepting jurisdiction in such circumstances. *See NCMIC Ins. Co.*, 375 F. Supp. 3d at 843 ("Therefore, the Court finds that Plaintiff's decision to seek federal jurisdiction was not motivated by a race for *res judicata*. The third *Grand Trunk* factor weighs in favor of exercising subject matter jurisdiction.") (Sargus, J.); *Flowers*, 513 F.3d at 559, 563 (finding no "indication of an improper motive in the record," and later noting the third factor "point[ed] toward exercising jurisdiction"); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (third *Grand Trunk* factor weighed in favor of exercising jurisdiction where the party who brought the declaratory relief complaint in federal court was not

using the remedy "merely for procedural fencing or to help win a race for res judicata") (internal quotations omitted); *W. Am. Ins. Co.*, 208 F. App'x at 398  (absent evidence of procedural fencing or an attempt to win a race to res judicata "the district court properly determined that the third factor weighed in favor of exercising jurisdiction").  In the context of a motion to remand specifically, the court in *Clifford v. Church Mutual Insurance Co.* found that this factor "weigh[ed] in favor of federal adjudication" where the plaintiffs "concede[d] that the third factor [wa]s not at issue to prevent federal jurisdiction."  No. 2:13-CV-853, 2014 WL 4805473, at *3 (S.D. Ohio Sept. 26, 2014).  The Sixth Circuit reaffirmed this rule as recently as May of this year, when it found that the third factor "weigh[ed] in favor of exercising jurisdiction under the Declaratory Judgment Act" given the lack of evidence of "procedural games" by the party that filed the declaratory judgment complaint.  *S2 Yachts, Inc.*, 2021 WL 1943371, at *7.

Cardinal Health conceded that National Union had not engaged in any of the "procedural games" that the third factor is designed to discourage.  Remand Motion at 13; Remand Reply at 10-12.  But it argued that this fact "offers no support for exercising jurisdiction," citing two cases.  Remand Motion at 13 (citing *Royal Surplus Lines Ins. Co. v. U.S. Four, Inc.*, 614 F. Supp. 2d 875, 879 (S.D. Ohio 2007)); *Cincinnati Ins. Cos. v. United Rentals, Inc.*, No. 1:08cv216, 2008 WL 11350340, at *1, *2 (S.D. Ohio May 14, 2008).  The Magistrate Judge apparently accepted Cardinal Health's argument that the absence of evidence of procedural fencing should be viewed as neutral, but cited neither of these cases and did not elaborate on the decision to accord the factor no weight.  Report and Recommendation at 8-9.

*Royal* and *Cincinnati Insurance* are inapposite.  In each of those cases, the presence of a parallel state case suggested the possibility of procedural fencing, and there was no indication that the opposing party conceded the absence of procedural fencing by the party opposing

- 14 -

remand, as Cardinal Health does here.  *Cincinnati Ins. Cos.*, 2008 WL 11350340, at *2

(discussing under the first two factors the presence of an underlying action; and noting that the

party opposing jurisdiction had made "allegations" of procedural fencing); *Royal Surplus Lines

Ins. Co.*, 614 F. Supp. 2d at 877, 878 (recognizing an underlying state court action was

significant enough to make the first two factors weigh against federal jurisdiction).[2]  Similarly, in

*United Specialty Insurance Co. v. Cole's Place, Inc.*, 936 F.3d 386 (6th Cir. 2019), which the

Report and Recommendation cites for other purposes, the Sixth Circuit suggested it might be

proper to weigh the third factor as neutral, but again in a circumstance where there was a need to

give the party asserting federal court jurisdiction "the benefit of the doubt" in the face of an

underlying state action, as well as an argument that the federal claims were born of procedural

fencing.  936 F.3d at 399; *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-cv-00326-

TBR, 2018 WL 1914731, at *1, *6 -*7 (W.D. Ky. Apr. 23, 2018).[3]

Where there exists a parallel state court action that could provide more complete relief, or

the potential for one, the possibility of mixed evidence on the issue of procedural fencing might

exist.  In the presence of such mixed evidence, a court could conclude that it should not accord

weight to the third factor.  But where, as here, no such opportunity exists, and the opposing party

---

[2]     In *Royal*, the court was not responding to a motion to remand or a motion asking the
court to decline to exercise jurisdiction; rather, after a summary judgement motion was "fully
briefed," the court took notice of the Sixth Circuit's decision in *Travelers Indemnity Co. v.
Bowling Green Professional Associates, PLC*, 495 F.3d 266 (6th Cir. 2007).  *Royal Surplus
Lines Ins. Co.*, 614 F. Supp. 2d at 877-78.  In *Travelers*, a case Cardinal Health frequently cites,
the court heavily relied on the existence of an underlying action pending in state court that could
have offered more complete relief to find that the *Grand Trunk* factors as a whole favored
remand, even as it found the third factor to be neutral.  495 F.3d at 271-73.

[3]     The *Cole's Place* court misread the lower court's decision.  The district court did not find
the third factor to be neutral; it held that four of the five Grand Trunk factors weighed in favor of
the Court's exercise of jurisdiction, including the third.  *United Specialty Ins. Co.*, 2018 WL
1914731, at *9.

16614623v2

concedes the absence of any evidence of procedural fencing, failing to accord *any* weight to the third factor would transform it from a factor to be weighed, into a one-way litmus test. Thus, the Magistrate Judge should have accorded to the third factor some weight in favor of exercising jurisdiction. That weight alone should reverse the outcome of the Report and Recommendation's "close call."

B. The Third Grand Trunk Factor Should Weigh Heavily In Favor of Jurisdiction, Given Cardinal Health's Artful Pleading.

The Report and Recommendation entirely dismisses the fact the Cardinal Health's complaint undeniably pleads all the elements of a damages claim, over which this Court's jurisdiction would be mandatory.[4] After recognizing that jurisdiction over a damages claim would be mandatory, the Report and Recommendation states: "But contrary to National Union's apparent suggestion, the fact that Cardinal Health opted to file a declaratory judgment action when it could have instead filed a damages claim does not demonstrate bad faith or somehow deprive the Court of its discretion to remand this action to state court." Report and Recommendation at 6. This holding misconstrues National Union's argument and misses the point.

The Report and Recommendation does not dispute that the Complaint pleads all the elements of a damages claim:

- Cardinal Health alleges a valid contract, stating that it "purchased from National Union certain general liability umbrella insurance policies." (Compl. ¶ 66);

- Cardinal Health alleges that it performed under that contract by giving "timely notice" of the Opioid Lawsuits. (*Id.* ¶ 60);

---

[4]    "The exercise of jurisdiction over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim." *Knowlton Constr. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-CV-0748, 2007 WL 4365690, at *3 (S.D. Ohio Dec. 13, 2007); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) (ordinarily, "a federal court cannot . . . dismiss or remand an action when the relief sought is not discretionary").

- Cardinal Health alleges a breach by National Union, saying that "National Union actually denies coverage and has failed to acknowledge, and/or has denied, and/or has failed to perform, any duty to defend under any of the National Union Policies." (*Id.* ¶ 76).

- Cardinal Health alleges that it already "has incurred millions of dollars of defense costs while defending the Opioid Claims," and "seeks a declaration that [National Union] must defend Cardinal Health or pay its defense costs, on both a retrospective and a prospective basis in the Exemplar Lawsuits, including Cardinal Health's defense costs incurred in the MDL." *Id.* ¶¶ 2-3.

*See* Remand Opposition at 16-17.  These allegations capture every element of a damages claim for breach of contract.  *Sophia's Cure Inc. v. AveXis, Inc.*, No. 2:16-CV-865, 2017 WL 4541449, at *3 (S.D. Ohio Oct. 10, 2017) ("[T]he essential elements of breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff; (3) the defendant's breach; and (4) damages or loss to the plaintiff.").  Given these allegations, the issue is not that Cardinal Health "could instead have filed a damages claim," but that it did, in fact, plead a damages claim in the form of a request for declaratory relief.

However, National Union did not argue, and does not argue, that this artful pleading "deprive[s] the Court of its discretion to remand this action to state court," as the Report and Recommendation suggests.  Report and Recommendation at 6.  Cardinal Health is the master of its pleading, but it must live with the consequences of its pleading decisions.  *Cf. Fayetteville Perry Local Sch. Dist. v. Reckers*, 892 F. Supp. 193, 197 (S.D. Ohio 1995) ("A plaintiff is master of his complaint, and if he chooses not to assert a federal claim, a defendant cannot remove on the basis of original federal question jurisdiction. . . .  However, a plaintiff may not escape federal jurisdiction by artful pleading.") (internal quotations and citations omitted).

One consequence of Cardinal Health's decision to plead around a damages claim is that this Court should be able to weigh that fact in favor of accepting jurisdiction.  The concept of "procedural fencing" is broad enough to encompass not only the conduct of the party seeking to invoke federal court jurisdiction, but the party seeking to avoid it.  *See W. World Ins. Co. v.*

- 17 -

*Hoey*, 773 F.3d 755, 761 (6th Cir. 2014) ("The term [procedural fencing] has come to encompass a range of tactics that courts regard as unfair or unseemly.").  Failing to weigh Cardinal Health's artful pleading in favor of exercising jurisdiction would encourage future plaintiffs seeking to avoid federal court to plead damages claims as requests for declarations that the defendant owes them already-incurred damages, as Cardinal Health does here.

In short, in light of the undisputed facts that National Union's decision to remove the case involved no procedural fencing, and that the Complaint artfully pleads all the elements of a claim over which the Court would have mandatory jurisdiction, the third *Grand Trunk* factor should weigh heavily in favor of the exercise of jurisdiction, and more than tip the balance in that direction.

## II.   THE REPORT AND RECOMMENDATION INCORRECTLY CONCLUDES THAT THIS CASE WOULD CAUSE FRICTION BETWEEN STATE AND FEDERAL COURTS.

The fourth *Grand Trunk* factor, as originally articulated by the Sixth Circuit, is "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  *Flowers*, 513 F.3d at 554.  The Report and Recommendation does not address this articulation of the standard separately, moving directly into a discussion of the three sub-factors.  But those sub-factors were developed after *Grand Trunk* to account for the fact that "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction."  *Id.* at 559-60 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).  *Flowers* thus suggests that the primary purpose of the sub-factors is to address a circumstance involving a parallel state court action.  Approaching the analysis of the fourth factor by analyzing only the sub-factors, as the Report and Recommendation does, undervalues the importance of the absence of a parallel state court proceeding.

16614623v2

Having agreed that this insurance coverage action does not arise out of a parallel state court action in which a state court would be making findings of fact and conclusions of law that might create overlapping jurisdiction, Report and Recommendation at 9-10, the Magistrate Judge should have recognized – and given more weight to – the fact that there is no possibility that an action in this Court would "encroach on state jurisdiction."  In *Express Packaging of Oh, Inc. v. American States Insurance Co.*, for example, this Court found that factor 4 as a whole weighed against remand where there was no possibility of a judgment "causing friction between the federal courts and the state courts" as "no other action exists or will be filed in state court on this claim that could be adversely affected by any judgment here by this Court,"  No. 5:09 CV 2318, 2010 WL 11667915, at *2 (N.D. Ohio Jan. 13, 2010).

Instead, the Report and Recommendation limits the relevance of the absence of a parallel state court proceeding to its analysis of the first sub-factor, which considers "[w]hether the underlying factual issues are important to an informed resolution of the case."  Report and Recommendation at 5, 9-10.  As stated, this sub-factor only makes sense in the context of a matter that involves a parallel state court proceeding involving "underlying factual issues," which further demonstrates that addressing the presence of a parallel state court action is the primary purpose of analyzing the sub-factors, as the *Flowers* court suggests.  In any event, the Report and Recommendation correctly finds that this sub-factor must be weighed in favor of jurisdiction, given the absence of a parallel state court action.  *Id*. at 9-10.

Like the first sub-factor, the second and third sub-factors seem to presuppose a parallel state court action, referring back to "underlying" factual and legal issues.  The second sub-factor asks "whether the state trial court is in a better position to evaluate those [underlying] factual issues than is the federal court," and the third sub-factor asks "whether there is a close nexus

between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560.  But in its analysis of these two sub-factors, the Report and Recommendation does not consider the absence of parallel state court proceedings.  In particular, the Report and Recommendation does not adequately address the fact that, given there is no parallel state court proceeding, the state court is not "likely to be in a better position to evaluate the factual issues than the federal court."  *W. World Ins. Co.*, 773 F.3d at 761.

Instead, the Report and Recommendation relies heavily on its conclusion that this insurance coverage action (based on nearly twenty-year-old insurance policies) involves "novel" and "unsettled" questions of state insurance law, which it believes the state court is "in a better position" to evaluate.  Report and Recommendation at 10-13.  The Report and Recommendation errs in overstating the importance of this observation.

As an initial matter, the Report and Recommendation makes no finding concerning which legal issues will be contested in the context of Cardinal Health's complaint.  This is unsurprising given the early stages of the proceeding.  But even if the Magistrate Judge correctly predicted some of the contested issues in this litigation, there is already Ohio case law, including at the appellate level, on some of those issues.  *See, e.g.*, *Jones v. Cincinnati Ins. Co.*, No. 96 CA 43, 1999 WL 420845, at *5–6 (Ohio Ct. App. June 21, 1999) (duty to defend standard is "well-settled" in Ohio); *Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.,* 990 F.2d 865, 872 (6th Cir. 1993) (Ohio law on the interpretation of insurance contracts is "well-established," and "Ohio courts have consistently described the ordinary meaning of 'accident' to refer to unintended and unexpected happenings"); *PICA Corp. v. Clarendon Am. Ins. Co.*, No. 2:07-CV-1126, 2008 WL 2872274, at *4 (S.D. Ohio July 22, 2008), *aff'd,* 339 F. App'x 540 (6th Cir. 2009) ("The Courts

in Ohio have consistently held that 'occurrence,' defined as 'an accident,' was intended to mean just that-- an unexpected, unforeseeable event.") (internal quotations omitted).

Preexisting state law does not need to be extensive to favor jurisdiction.  In *NCMIC*, for example, this Court acknowledged that the supporting case law was "limited," but found in favor of jurisdiction as the precedent was "not nonexistent."  *NCMIC*, 375 F. Supp. 3d at 845.  Indeed, "district courts should not 'always turn away a declaratory judgment action when an undetermined question of state law is presented.'"  *Id.* (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 969 (6th Cir. 2000)).  Here, the Report and Recommendation acknowledges that there are at least two Ohio state court cases bearing upon the issues it identifies as unsettled. Report and Recommendation at 11 (citing *Cincinnati Ins. Co. v. Discount Drug Mart, Inc.*, No. CV-19-913990, 2020 WL 6706791 (Ohio Com. Pl. Sept. 9, 2020) and *Acuity v. Masters Pharm., Inc.*, No. A- 1701985, 2019 WL 9698564 (Ohio Com. Pl. Feb. 1, 2019)).  The Report and Recommendation states that the trial courts in those two cases "have reached inconsistent results," but one of those trial courts was reversed by the Ohio First District Court of Appeals, essentially aligning the decisions.  *Id.; Cincinnati Ins. Co v. Discount Drug Mart, Inc.*, No. CV-19-913990, 2020 WL 6706791 (Ohio Com. Pl. Sept. 9, 2020); *Acuity v. Masters Pharm., Inc.*, No. C-190176, 2020 WL 3446652 (Ohio Com. Pl. Feb. 1, 2019), *appeal allowed*, 159 N.E.3d 277 (Ohio 2020).  Moreover, both cases are pending on appeal, and one has been fully briefed before the Ohio Supreme Court.  Report and Recommendation at 11, *see* Docket, *Acuity v. Masters Pharm., Inc.*, Case No. 2020-1134.  Therefore, well before this action will be at the stage of merits disposition, Ohio's highest court will have spoken as to at least some of the issues that concerned the Magistrate Judge, and additional appellate law may exist for others.

The Report and Recommendation also errs in its conclusion that Ohio's interest in regulating insurance companies should weigh in favor of declining jurisdiction under the fourth factor.  Report and Recommendation at 11-12.  There is no Ohio insurance regulation at issue; this is a breach of contract case, and district courts "routinely appl[y] principles of Ohio law to construe and interpret contracts, including insurance policies, in diversity cases."  *Clifford*, 2014 WL 4805473, at *4 (finding factor 4 neutral as a whole); *Equity Plan. Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2020 WL 5909806, at *8-9 (N.D. Ohio Oct. 6, 2020).

Similarly, the Report and Recommendation finds that this case may "implicate[] Ohio's interests in protecting residents – not only through the regulation of insurance but also in the state's response to the opioid epidemic."  Report and Recommendation at 12.  Respectfully, that is not so.  As just noted, there are no insurance regulatory issues presented here.  And "the state's response to the opioid epidemic" is not what is at issue in this case.  The state is not a party to these proceedings.

Moreover, the opioid epidemic is not only an Ohio problem, it is a nationwide problem.  The Opioid Lawsuits have been filed in "51 state or federal jurisdictions."  Compl. ¶ 13.  Among the Exemplar Lawsuits alone are actions by cities and counties in New York, Maryland, and West Virginia, a Native American tribe, a suit brought by an individual in Illinois, and actions brought by hospitals in Arizona and Florida.  *Id*. ¶¶ 25-52.

This Court is well-suited to the task of addressing a case such as this that implicates matters of national scope.  This is particularly true where, as here, while state law likely will govern the contract interpretation questions, there are important underlying issues of federal law.  The Opioid Lawsuits "assert a wide variety of federal and state causes of action."  Report and Recommendation at 2.  Notably, opioids are regulated under federal law by the Comprehensive

Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, (the "Controlled Substances Act" or "CSA"), which plaintiffs allege requires distributors of opioids, like Cardinal Health, to "maintain effective controls against diversion of the controlled substances that they manufacture or distribute." Compl. Ex. 11 (Cabell County Complaint) ¶ 1096; *see also* Compl. Ex. 2 (Summit County Complaint) (ECF 1-6) ¶ 585.  Some underlying plaintiffs' causes of action stem from purported violations of the CSA and its implementing regulations.  *See, e.g.*, Compl. Ex. 1 (Cuyahoga County Compl.) ¶¶ 893-921 (asserting RICO claims based on violations of the CSA).

In sum, the focus of the fourth *Grand Trunk* factor is on avoiding "friction" between state and federal courts, and federal court "encroachment upon state jurisdiction."  There is no possibility here of any "encroachment," and the only possible "friction" arises solely because the case will involve questions of state law on the interpretation of insurance contracts under circumstances that are relatively recent.  While it is difficult to say whether those circumstances will raise novel issues of  the application of law to facts, given the early stages of the proceedings, any novelty connected with the application of well-established principles of insurance contract interpretation to the Opioid Lawsuits is counter-balanced by the fact that Ohio appellate courts are already addressing these issues.  The Report and Recommendation thus erred in weighing the fourth *Grand Trunk* factor in favor of remand.

## III.  THE STATE COURT WOULD NOT PROVIDE A BETTER OR MORE EFFECTIVE ALTERNATIVE REMEDY.

Under the final *Grand Trunk* factor, courts consider the availability of a "better or more effective" alternative remedy.  *NCMIC*, 375 F. Supp. 3d at 847.  As the Report and Recommendation correctly recognizes, "having a state declaratory relief action available as an alternative is not automatically better; rather, 'our inquiry on this factor must be fact-specific.'"

Report and Recommendation at 13 (quoting *Flowers*, 513 F.3d at 562).  The Report and Recommendation does not opine that this Court would be an "inferior forum" compared to the state court, *see W. World Ins. Co.*, 773 F.3d at 761, and rightly so.  Instead, the Magistrate Judge relies on the same observation that drove the decision on the fourth factor – that "this case involves issues of developing, unsettled state law" – to conclude that the fifth factor weighs in favor of remand.  Report and Recommendation at 13-14.  National Union objects to this determination.

As discussed above, the Magistrate Judge's observation concerning the nature of the issues to be litigated is somewhat premature, and does not take into account guidance that will be forthcoming from the Ohio Supreme Court and at least one other Ohio appellate court.  Perhaps more importantly for purposes of a fact-specific analysis under the fifth *Grand Trunk* factor, the Report and Recommendation does not acknowledge the nationwide scope of the opioid epidemic and the Opioid Lawsuits, nor the importance of federal drug regulations to those claims and to understanding the conduct of pharmaceutical distributors like Cardinal Health that could be at issue in insurance coverage litigation.  Those features of this case weigh in favor of federal court jurisdiction, and serve to counterbalance the possibility of adjudicating developing issues of Ohio law.  At best, the fifth *Grand Trunk* factor should have been weighed as neutral.

## IV.    BALANCING THE *GRAND TRUNK* FACTORS REQUIRES DENIAL OF THE MOTION TO REMAND.

The Magistrate Judge found the case to be a "close call" as it was, with the first and second *Grand Trunk* factors weighing in favor of jurisdiction, the third factor neutral, and the fourth and fifth factors weighing against jurisdiction.  Report and Recommendation at 14.  For the reasons discussed above, National Union objects to the Magistrate Judge's findings on the third, fourth and fifth factors, and to the Report and Recommendation's ultimate balancing of the

- 24 -

factors.  At least four of the five *Grand* Trunk factors should have been weighed in favor of this Court accepting jurisdiction, leading to that outcome.  But if this Court disagrees with the Magistrate Judge even on a single factor, the scales should tip in favor of exercising jurisdiction.

## **CONCLUSION**

For the reasons set forth in this Memorandum and in National Union's Memorandum in Opposition to Cardinal Health Inc.'s Motion to Remand to State Court, this Court should modify the Magistrate Judge's Report and Recommendation, and deny Cardinal Health's Motion to Remand.

Dated:  June 21, 2021

Respectfully submitted,

*/s/ Quintin F. Lindsmith*
Quintin F. Lindsmith (0018327)
Drew H. Campbell (0047197)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
(614) 227-2300
(614) 227-2390 (facsimile)
Email: qlindsmith@bricker.com
         dcampbell@bricker.com

*Counsel for Defendant*


Mitchell J. Auslander (NY Bar # 1708841)
(*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8201
(212) 728-9201 (facsimile)
Email: mauslander@willkie.com


Joseph G. Davis (DC Bar # 441479) (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K. Street, NW
Washington, DC 20006-1238
(202) 303-1131
(202) 303-2131 (facsimile)
Email:  jdavis@willkie.com

*Co-Counsel for Defendant*

- 26 -

16614623v2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was filed with the Clerk of

Courts using the ECF system, which will send notification of such filing to all attorneys of record

on the 21st day of June, 2021.  Notice was also provided by electronic mail to the following:

Michael R. Gladman
Yvette McGee Brown
Joseph J. Zelasko
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215-2673
mrgladman@jonesday.com
ymcgeebrown@jonesday.com
jzelasko@jonesday.com

Mark J. Andreini
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
mjandreini@jonesday.com

Michael H. Ginsberg
John E. Iole
JONES DAY
500 Grant Street – 45th Floor
Pittsburgh, PA 15219
jeiole@jonesday.com

*Counsel for Plaintiff*

/s/ Drew H. Campbell
Drew H. Campbell (0047197)

16614623v2