UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARDINAL HEALTH, INC.,

       Plaintiff,

   v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

       Defendant.

Case No. 2:20-CV-5854
JUDGE EDMUND AL. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

On December 10, 2020, Plaintiff filed a Motion to Remand (ECF No. 17), to which

Defendant responded in opposition (ECF No. 24), and Plaintiff replied (ECF No. 25). On June 7,

2021, the Magistrate Judge issued a Report and Recommendation in which she recommended

that Plaintiff's Motion to Remand be granted.  (ECF No. 27.) On June 21, 2021, Defendant

timely filed an Objection (ECF No. 28) and on July 6, 2021, Plaintiff filed a Response to the

Objection (ECF No. 29). Defendant then filed a Motion for Leave to File a Limited Reply in

Support if its Objection to the Magistrate Judge's Report and Recommendation to Remand to

State Court Instanter.  For the reasons that follow, the Court **GRANTS** Defendant's Request to

File a Reply Instanter and **OVERRULES** Defendant's Objection.

## I.

This case arises from an insurance coverage dispute. Plaintiff, Cardinal Health, Inc., on

behalf of itself and its insured subsidiaries and affiliates named in underlying lawsuits stemming

1

from the national opioid epidemic, including Cardinal Health 110, LLC (collectively "Cardinal Health"), filed a declaratory judgment action in an Ohio state court against its insurer, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). Cardinal Health seeks contract determinations and declarations concerning the insurance obligations of National Union for the defense and/or defense costs of underlying opioid lawsuits. National Union removed this state declaratory action to this Court (ECF No. 1) pursuant to 28 U.S.C. § 1441, on the basis of diversity jurisdiction, thereby asking the Court to proceed under the Declaratory Judgment Act, 28 U.S.C. § 2201.

A.    **Background**

The Magistrate Judge accurately set forth the background of this dispute, which the Court reiterates here. Cardinal Health, Inc. is a publicly-traded Ohio corporation headquartered in Franklin County, Ohio. Plaintiff's wholly-owned subsidiary, Cardinal Health 110, LLC, distributes wholesale pharmaceutical products, including prescription opioid medications, to licensed and registered pharmacies. National Union is a Pennsylvania corporation with its principal place of business in New York. National Union issued multiple commercial umbrella insurance policies to Cardinal Health covering the period of June 30, 1999, through June 30, 2004 (the "Policies").

At present, more than 3,000 lawsuits have been filed in federal and state courts across the country against companies, including Cardinal Health, that manufacture, distribute, and/or dispense prescription opioids (the "Opioid Litigation" or "Underlying Lawsuits"). The Opioid Litigation plaintiffs include governmental entities, Native American tribes, individuals, hospitals,

2

unions, and other third-party healthcare payors (the "Opioid Plaintiffs"). Most federal cases have been consolidated into a coordinated, multi-district case pending in the United States District Court for the Northern District of Ohio, captioned *In re National Prescription Opiate Litigation*, Case No. 1:17-MD-284 (the "MDL").

In general, the Opioid Plaintiffs allege, among other things, that Cardinal Health, as a distributor, caused, or contributed to, the nation's opioid crisis by failing to detect or report suspicious or excessive orders of prescription opioids, failing to take appropriate steps to stop fulfillment of such orders, and failing to oppose allegedly improper conduct of other entities named as defendants in the Underlying Lawsuits. The Opioid Plaintiffs further allege that they expended substantial amounts of money to remedy or mitigate the harms attributable to Cardinal Health's conduct. They assert a wide variety of federal and state causes of action, many seeking to recover for increased payments, services, treatment, and/or care allegedly necessitated by the opiate-related addictions, overdoses, hospitalizations, and deaths of those they serve (*i.e.*, residents, members, and patients).

Since 2018, Cardinal Health has sought coverage for the Opioid Litigation pursuant to the parties' Policies, and National Union has continually reserved the right to deny coverage. Dissatisfied with National Union's response, on October 7, 2020, Cardinal Health filed this declaratory action in the Ohio Court of Common Pleas for Franklin County, Ohio, seeking determinations of the parties' rights and obligations under the Policies, especially as to their disputed coverage and defense provisions. (*See* Compl. for Declaratory J., ECF No. 7.) Cardinal Health identifies seventeen cases selected from the voluminous Opioid Litigation (called

3

"Exemplar Lawsuits") for which it specifically seeks defense and/or defense costs. (*Id.* at ¶¶ 15–59.)

## B. Remand Request

On November 10, 2020, National Union removed this declaratory-judgment action to this Court in accordance with 28 U.S.C. §§ 1332 and 1441. (ECF Nos. 1, 1-1.) On December 10, 2020, Cardinal Health filed its Motion to Remand, asking this Court to decline to exercise jurisdiction and remand this action.

The Magistrate Judge introduced the arguments made in the remand briefing as follows:

> Cardinal Heath does not dispute that this action falls within the Court's original jurisdiction, and the parties agree that the requirements of diversity jurisdiction are satisfied—the amount in controversy exceeds $75,000, and the disputing parties have complete diversity of citizenship. *See* 28 U.S.C. § 1332. Nor does Cardinal Health allege a defect in the removal process. Rather, Cardinal Health asks this Court to refrain from exercising its otherwise valid subject-matter jurisdiction in favor of state jurisdiction over this case. National Union opposes remand, characterizing Plaintiff's filing of this action in state court as "forum shopping," and asserting that application of the relevant considerations to the facts of this case makes clear that this Court should exercise its discretion to retain this case.

(R&R at 3–4, ECF No. 27.)

After a thorough analysis of the appropriate standard and the facts presented, the Magistrate Judge recommended granting Cardinal Health's Motion to Remand. Defendant timely filed its Objection, which is ripe for review.

## II.

## A. Dispositive Report and Recommendations

When a party objects to a magistrate judge's report and recommendation on a dispositive

matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). A motion to remand is considered a dispositive motion. *See Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.     Declaratory Judgement Actions**

A federal declaratory judgment claim is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201. In relevant part, the Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Supreme Court has repeatedly emphasized the discretionary nature of the Act." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990) (citing, *inter alia*, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) ("The Supreme Court has indicated that this act 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants[.'] In passing the act, Congress 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'") (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–89 (1995)). Of course, this Court may not "decline to entertain [this] action as a matter of whim or personal disinclination," but must exercise its judicial discretion under the Act "in the public interest." *Mercier*, 913 F.2d at 277.

5

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.*, 515 U.S. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Ultimately, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (quoting *Wycoff*, 344 U.S. at 243).

The United States Court of Appeals for the Sixth Circuit has delineated parameters to consider when determining whether to exercise this discretion (the "*Grand Trunk* factors"):

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).  Additionally, consideration of the fourth factor involves analyzing the following three sub-factors:

> (1) Whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

6

(3) whether there is a close nexus between underlying factual and legal issues and
state law and/or public policy, or whether federal common or statutory law
dictates a resolution of the declaratory judgment action.

*Id.* (citing *Flowers*, 513 F.3d at 560).

The relative weight of the five factors is to be determined by the facts of the case. *Id.*;

*Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) ("We have never assigned

weights to the *Grand Trunk* factors when considered in the abstract, . . . and rightly so—the

factors are not, of course, always equal."). These factors assist trial courts to reasonably assess

the underlying principles of "efficiency, fairness and federalism" in its effort to reach a "useful

and fair" result. *Hoey*, 773 F.3d at 759.

## C.    Limited Reply

Defendant has moved to file a limited reply in support of its Objection to the Report and

Recommendation.  In the reply, Defendant presents the following

> In its Response to National Union's Objection to the Report and
> Recommendation ("Response"), Cardinal Health argues that the Court may remand
> this action based solely on "principles of comity and federalism," skirting the
> balancing test required under *Grand Trunk Western Railroad Co. v. Consolidated
> Rail Corp.,* 746 F.2d 323 (6th Cir. 1984) ("*Grand Trunk*"). *See* Response at 12
> ("Principles of comity and federalism outweigh all other considerations under the
> *Grand Trunk* analysis here . . . ."). National Union submits this Limited Reply to
> respond to that argument, by which Cardinal Health invites the Court to disregard
> clear and binding Sixth Circuit precedent in the name of misplaced concerns about
> "comity and federalism." This case presents no concerns of comity, because there
> is no underlying state case to which comity might be extended. And while duly
> noting that the Supreme Court will soon decide *Acuity v. Masters Pharm., Inc.*, 160
> Ohio St. 3d 1495 (Ohio 2020), Cardinal Health nevertheless fails to acknowledge
> that the decision will provide the courts of this state – federal and state – with
> guidance on what the Magistrate Judge considered developing issues of state law,
> thereby mitigating any federalism concern and disposing of the Magistrate Judge's
> primary reason for recommending remand.

7

(Reply at 1, ECF No. 30-1.) Defendant's clarify that their concern that this "Court should not sidestep *Grand Trunk* in the name of misperceived considerations of comity and federalism." *Id.* at 2 (stating that "Cardinal Health's one-factor-trumps-all approach finds no support in the case law."). This Court agrees with Defendant's contention.

As Defendant correctly argues, "[t]o determine whether to exercise jurisdiction under the Declaratory Judgment Act, the Sixth Circuit *requires* district courts to engage in a 'reasoned analysis of whether issuing a declaration would be useful and fair' by applying the *Grand Trunk* factors." *Id.* (citing *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (citing *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)); *Wilmington Sav. Fund Soc'y, v. Kattula*, No. 19- 1138, 2019 WL 7882540, at *2 (6th Cir. Nov. 6, 2019) ("Because the district court here did not so much as acknowledge the *Grand Trunk* factors—much less apply them— we are unable to determine whether it abused its discretion, necessitating remand.")). The Court's analysis below engages in the reasoned analysis required under Sixth Circuit law.

### III.

In applying the appropriate standard, as set forth above, the Magistrate Judge concluded:

> This case presents a close call. As discussed above, the undersigned finds that *Grand Trunk* factors one and two weigh in favor of exercising jurisdiction, factor three is neutral, and factors four and five weigh against exercising jurisdiction. On balance, the undersigned concludes that the most efficient, useful, and fair result would be for this Court to decline jurisdiction and allow the case to proceed in state court. In reaching this determination, the undersigned is most persuaded by the novel nature of these type of claims, the lack of developed state-court guidance in this area, and the pendency of other materially-related state-court actions addressing similar contractual issues in opioid-related declaratory judgment actions. *Cf. Hoey*, 773 F.3d at 760 ("A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law[.]"); *Mass. Bay Ins. Co.*, 759 F. App'x at 443. ("Although other courts

may have reached a different result, the district court did not abuse its substantial discretion in declining jurisdiction.").

(R&R at 14–15, ECF No. 27.)

Defendant filed an Objection, arguing that the Magistrate Judge erred in her consideration of *Grand Trunk* factors three, four, and five. Plaintiff responds, not contesting the Magistrate Judge's finding with regard to factors one and two. This Court too agrees that the first two *Grand Trunk* factors, (1) whether the declaratory action would settle the controversy and (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue, both weigh in favor of this Court exercising jurisdiction. That is, the Magistrate Judge correctly found that Cardinal Health commenced this declaratory judgment action, which reflects its view that a declaratory judgment would settle the parties' coverage disputes and clarify the legal relations at issue.

## A.    Third Factor

The third *Grand Truck* factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Mass. Bay Ins. Co*., 759 F. App'x at 438. The Magistrate Judge found "that neither party is using this declaratory action as a vehicle for 'procedural fencing' or winning 'a race for *res judicata*.'" (R&R at 8, ECF No. 27.)

Defendant objects to this finding in two general categories. First, National Union maintains that the conclusion is "an error" because "the Magistrate Judge, without citing any authority, held the factor 'to be neutral,' *id.* at 9*,* thus giving the third *Grand Trunk* factor no weight at all."  (Obj. at 13, ECF No. 28.) Second, Defendant objects to the Magistrate Judge's

9

failure to accept its argument that Plaintiff engaged in procedural fencing by its "artful pleading." *Id*. at 16.

## 1.  Alleged Artful Pleading as Procedural Fencing

Defendant argues that the Magistrate Judge "misconstrues National Union's argument and misses the point" of its argument related to artful pleading. (Objection at 16, ECF No. 28.) Specifically, Defendant contends:

> The Report and Recommendation entirely dismisses the fact the Cardinal Health's complaint undeniably pleads all the elements of a damages claim, over which this Court's jurisdiction would be mandatory. After recognizing that jurisdiction over a damages claim would be mandatory, the Report and Recommendation states: "But contrary to National Union's apparent suggestion, the fact that Cardinal Health opted to file a declaratory judgment action when it could have instead filed a damages claim does not demonstrate bad faith or somehow deprive the Court of its discretion to remand this action to state court."

(Objection at 16, ECF No. 28) (citing R&R at 6). Defendant asserts that it "did not argue, and does not argue, that this artful pleading 'deprive[s] the Court of its discretion to remand this action to state court,' as the Report and Recommendation suggests. Rather, "Cardinal Health is the master of its pleading, but it must live with the consequences of its pleading decisions. . . . One consequence of Cardinal Health's decision to plead around a damages claim is that this Court should be able to weigh that fact in favor of accepting jurisdiction." *Id*. Defendant's arguments are not well taken.

As Cardinal Health correctly points out, the pleading of a declaratory judgment action seeking to clarify contract rights is what declaratory judgment actions are designed to provide. (Resp. to Obj. at 13, ECF No. 29) (citing Ohio Revised Code § 2721.04; Mid-Am. *Fire & Cas. Co. v. Heasley*, 113 Ohio St. 3d 133, 136 (2007) ("The purpose of a declaratory judgment action

is to dispose of uncertain or disputed obligations quickly and conclusively. . . .[and this type of action allows the parties to] "eliminate uncertainty regarding their legal rights and obligations" without raising complicated disputes of fact that may arise in a breach of contract action. (internals omitted)); 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.) ("The remedy made available by the Declaratory Judgment Act" "permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants"); *Heasley*, 113 Ohio St. 3d at 136 ("The declaratory judgment action may be brought even before any contract breach. R.C. 2721.04.")).

This Court concludes that the fact that Plaintiff could have but did not file a complaint for damages does not mean that it made a "decision to plead around a damages claim" as Defendant suggests. Plaintiff's filing of a declaratory judgment action pursuant to Ohio Revised Code § 2721.04, in a state court in Ohio, requesting interpretation of an Ohio insurance contract, simply does not here reflect artful pleading.

### 2. Finding of Neutrality of the Third Factor

National Union argues that:

> Where the party asserting jurisdiction has not engaged in procedural fencing, the weight of authority dictates that the third factor is not neutral, but instead weighs in favor of the exercise of jurisdiction, particularly where, as here, there is no underlying state court action that could provide more complete relief. This Court and the Sixth Circuit have held repeatedly that the third factor should weigh in favor of accepting jurisdiction in such circumstances. *See NCMIC Ins. Co.*, 375 F. Supp. 3d at 843 ("Therefore, the Court finds that Plaintiff's decision to seek federal jurisdiction was not motivated by a race for *res judicata*. The third *Grand Trunk* factor weighs in favor of exercising subject matter jurisdiction.") (Sargus, J.); *Flowers*, 513 F.3d at 559, 563 (finding no "indication of an improper

motive in the record," and later noting the third factor "point[ed] toward exercising jurisdiction"); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (third *Grand Trunk* factor weighed in favor of exercising jurisdiction where the party who brought the declaratory relief complaint in federal court was not using the remedy "merely for procedural fencing or to help win a race for res judicata") (internal quotations omitted); *W. Am. Ins. Co.*, 208 F. App'x at 398 (absent evidence of procedural fencing or an attempt to win a race to res judicata "the district court properly determined that the third factor weighed in favor of exercising jurisdiction").

In the context of a motion to remand specifically, the court in *Clifford v. Church Mutual Insurance Co.* found that this factor "weigh[ed] in favor of federal adjudication" where the plaintiffs "concede[d] that the third factor [wa]s not at issue to prevent federal jurisdiction." No. 2:13-CV-8 3, 2014 WL 4805473, at *3 (S.D. Ohio Sept. 26, 2014). The Sixth Circuit reaffirmed this rule as recently as May of this year, when it found that the third factor "weigh[ed] in favor of exercising jurisdiction under the Declaratory Judgment Act" given the lack of evidence of "procedural games" by the party that filed the declaratory judgment complaint. *S2 Yachts, Inc.*, 2021 WL 1943371, at *7.

(Obj. at 13–14, ECF No. 28.)

Plaintiff disagrees, asserting that "[t]he Magistrate Judge's conclusion that factor 3 was 'neutral' is amply supported by Sixth Circuit precedent." (Pl. Resp. to Obj. at 14 – 15 , ECF No. 29) (citing *Travelers*, 495 F.3d at 272 ("With respect to the third factor, the district court determined correctly that no facts demonstrate that the declaratory judgment action by Travelers was an attempt at 'procedural fencing' or exude the appearance of a 'race' to judgment. Although no improper motive prompted this action, this factor is neutral."); *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019) ("The third factor usually does not weigh heavily in the analysis. . . . If there is no evidence of procedural fencing, we often find that the factor is 'neutral. . . .'")). Cardinal Health continues, citing to over twenty district courts weighing this factor as "neutral." *Id*. at 15–17.

12

A review of the case law and the facts of this case reflect that the Magistrate Judge correctly found this factor to be neutral. First, Plaintiff has pointed to a plethora of courts in this circuit that find this factor "neutral" when procedural fencing is absent. Second, the cases upon which Defendant relies are distinguishable in an important aspect. That is, in all but one of the cases, the plaintiff filed the case in federal court not in state court as did Cardinal Health. *See S2 Yachts, Inc.*, 20-1479, 2021 WL 1943371, at *1 (6th Cir. May 14, 2021); *Northland Ins. Co.*, 327 F.3d 448; *Am. Ins. Co.*, 208 F. App'x 393; *NCMIC Ins. Co.*, 375 F. Supp. 3d 831. Thus, the entire case was viewed from this lens, *i.e.*, did the Plaintiff engage in procedural fencing by bringing a claim for declaratory judgment in federal court.

In the one case that was removed to federal court, *Clifford*, the court stated: "Plaintiffs concede that the third factor is not at issue to prevent federal jurisdiction. CMI agrees that there is no procedural fencing or race for *res judicata* issue in this case because there is no ongoing state court case. Thus, the third factor weighs in favor of federal adjudication." 2014 WL 4805473, at *3. The Court notes here that, even if it agreed with this case (and it were not distinguishable for other reasons), it would make no difference.

This is because, not all the *Grand Trunk* factors are equal. The purpose of the *Grand Trunk* factors is not to create a rigid formula but to promote judicial efficiency and fairness. The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced," only that they should be used to reach a "useful and fair" result. *Massachusetts Bay*, 759 F. App'x at 442; *Guild Assocs., Inc. v. Bio-Energy (Washington) LLC*, No. 2:13-CV-1041, 2015 WL 13034879, at *7 (S.D. Ohio Feb. 12, 2015) ("The relevant weight of these underlying considerations, as well

13

as the factors themselves, varies depending on the facts of each case."); *Frankenmuth Mut. Ins. Co. v. Balis Campbell, Inc.*, No. 6:18-CV-291-CHB, 2020 WL 7774904, at *13 (E.D. Ky. Dec. 30, 2020) ("[T]he Court must balance the five *Grand Trunk* factors on a case-by-case basis."); *Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 880 (E.D. Ky. 2016) ("The Sixth Circuit has never indicated how these *Grand Trunk* factors should be balanced, but has advised that the factors are not equally weighted and their relative weight depends heavily on the underlying considerations of efficiency, fairness, and federalism, which will vary depending on the circumstances of each case." (internals omitted)). Depending on the case, one factor may be significant enough to outweigh the other four. For example, in *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000), the Sixth Circuit affirmed the district court's decision to decline jurisdiction over a declaratory judgment action on the basis of a single factor—factor 4—even though all other factors supported exercising jurisdiction. And, here, this Court likewise finds Factor 4 to be heavily weighted in favor of remand.

**B.    Fourth Factor**

The fourth *Grand Trunk* factor, as originally articulated by the Sixth Circuit, is "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Flowers*, 513 F.3d at 554. Factor 4 was clearly the most important consideration in the Magistrate Judge's analysis:

> [M]aterially-similar insurance coverage actions are already proceeding in Ohio, and Ohio has a strong interest in consistently defining its insurance law, especially as it applies to the developing landscape of opioid litigation. Thus, considering the sub-factors together, because proceeding in the federal forum with this case presents significant concerns of state encroachment, the undersigned finds that factor four weighs in favor of remand.

14

. . . .

[T]he undersigned is most persuaded by the novel nature of these type of claims, the lack of developed state-court guidance in this area, and the pendency of other materially-related state-court actions addressing similar contractual issues in opioid-related declaratory judgment actions.

(R&R at 13, 15, ECF No. 27.)

In its de novo review of this issue, the Court finds the Magistrate Judge's analysis thoughtful and correct. She appropriately applied the standard to the facts before her. In addition, this Court highlights that this case raises insurance policy interpretation issues governed by Ohio law as applied to developing claims in opioid litigation. Many of these insurance issues are being litigated in Ohio state courts, including the Supreme Court of Ohio.

In the instant action, there are at least two insurance coverage cases arising out of underlying opioid litigation are pending in Ohio's appellate courts, including one before the Supreme Court of Ohio. These coverage cases have required more than routine applications of law to familiar factual scenarios with predictable outcomes. Two Courts of Common Pleas reached different conclusions, and both cases were appealed. First, in June 2020, the Court of Common Pleas of Hamilton County was reversed by the Court of Appeals for the First District after the trial court held that an insurer had no duty to defend its policyholder against underlying opioid claims. *Acuity v. Masters Pharm., Inc.*, No. C-190176, 2020 WL 3446652 (Ohio Ct. App. June 24, 2020). On December 15, 2020, the Supreme Court of Ohio accepted review of that case, which is currently

15

pending. *See Acuity v. Masters Pharm., Inc*., 160 Ohio St. 3d 1495 (Ohio 2020). The

Supreme Court of Ohio's ultimate decision may affect how some (but not all) issues in

this case are resolved. A second case is pending before the Ohio Court of Appeals for the

Eighth District, as of November 12, 2020. *See Cincinnati Ins. Co. v. Discount Drug Mart*,

*Inc.*, Case No. CA-20-110151. Unlike in the *Acuity* litigation, the trial court in *Discount*

*Drug Mart* held that an insurer did owe a duty to defend its policyholder for underlying

opioid claims. *Cincinnati Ins. Co. v. Discount Drug Mart, Inc.*, No. CV-19-913990, 2020

WL 6706791, at *6 (Ohio Com. Pl. Sep. 09, 2020).

As Plaintiff correctly points out, the Supreme Court of Ohio's grant of a

discretionary "jurisdictional appeal" in the *Acuity* case means that the "case involves a

question of public or great general interest" and not merely application of settled

standards to correct a lower court error. (Resp. to Obj. at 7) (citing Ohio S. Ct. Prac. R.

5.02(A)(3); *Anderson v. WBNS-TV, Inc.*, 158 Ohio St.3d 307, ¶ 16 (DeWine, J.,

concurring) (case did not present "an issue of public or great general interest" but instead

"involved the application of settled standards and thus called for (at most) error

correction"); *Greenwood v. Taft, Stettinius & Hollister*, 75 Ohio St. 3d 1204, 1205 (1996)

(Pfeiffer, J., dissenting from denial of discretionary appeal) (The Supreme Court of Ohio

may hear a discretionary appeal where a "case involves a matter of great public or

general interest, concerns an area which this court has not recently addressed, and

presents novel legal issues."). Under these circumstances, principles of comity and

federalism weigh against exercising jurisdiction. *Bituminous Cas. Corp. v. J & L Lumber*

16

*Co.*, 373 F.3d 807, 816 (6th Cir. 2004) ("[T]he district court should have recognized the possibility that it would render a judgment inconsistent with the state court on that issue. We conclude that considerations of comity weigh against exercising jurisdiction.").

In analyzing the second sub-factor of Factor 4, the Magistrate Judge agreed that these considerations favored declining jurisdiction:

> There is a dearth of Ohio caselaw in this relatively new, actively developing arena of insurance-coverage claims arising from opioid lawsuits. Review of the state-court cases decided thus far reflect that parties are pursuing alternative theories of interpretation, and trial courts interpreting such insurance-contract provisions have reached inconsistent results. These cases are currently on appeal—the former before the Ohio Eighth District Court of Appeals and the latter before the Ohio Supreme Court (having already been reversed by the Ohio First District Court of Appeals).
>
> In these recent opioid-related insurance cases, in Ohio and across the country, insured opioid manufacturers, wholesale distributors (like Cardinal Health), and retailors are arguing for defense coverage of the MDL and other opioid litigation (like the Exemplar Lawsuits). Contested issues include whether the underlying opioid litigation alleges covered "damages," whether the damages are "because of bodily injury," and whether there exists a covered "occurrence." Many of these same issues are at play in the Parties' declaratory judgment action. Consideration of such issues, as well as legal theories unique to the Parties' Policies under Ohio law, are better addressed by Ohio courts.

(R&R at 10–11) (internal citations omitted). The Magistrate Judge is right. These are state-law issues that are best left to Ohio state courts at both the trial and appellate levels.

In *Roumph*, the Sixth Circuit explained this fourth factor in a way helpful here:

> The district court, however, pointed to a factor that supports its decision not to proceed—that "there are no reported decisions in Michigan or elsewhere construing the language of [the] 'sexual misconduct' endorsement." The district court concluded from this factor that it would be inappropriate "to preempt the right of the state court to rule on a previously undetermined question of state law." *Omaha Property & Casualty*, 923 F.2d at 448; *see also American Home Assurance*

17

> *Co. v. Evans*, 791 F.2d 61, 63 (6th Cir.1986). What is involved in this case is an interpretation of a special contract of insurance.
>
> Indeed, had the district court undertaken the task of legal interpretation, we might be in a position to decide whether the policy limits should be $100,000, rather than $3,000,000. Such a result might, of course, "increase the friction between our federal and state courts." This is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion.

*Roumph*, 211 F.3d at 968–69.

Similarly, this Court should not always turn away a declaratory judgment action when an undetermined question of state law is presented. However, the instant case brings with it unique coverage issues related to the opioid epidemic, and weighs very heavily in favor of this Court declining jurisdiction.

## C.  Fifth Factor

Factor 5 asks whether there is an alternative remedy which is better or more effective. *Travelers*, 495 F.3d at 271. The availability of the same declaratory relief under state law weighs against exercising federal jurisdiction. *Travelers*, 495 F.3d at 273 ("Finally, with respect to the fifth factor, the district court held that alternative remedies to federal jurisdiction existed pursuant to Kentucky's declaration of rights procedure. . . . [T]he district court held that this factor weighed against federal discretionary jurisdiction. We agree.").

In National Union's Objection, it states that "the Magistrate Judge relies on the same observation that drove the decision on the fourth factor – that "this case involves issues of developing, unsettled state law" – to conclude that the fifth factor weighs in favor of remand. National Union objects to this determination." (Obj. at 24, ECF No. 28.) Defendant further

18

contends that the Report and Recommendation's discussion "concerning the nature of the issues to be litigated is somewhat premature, and does not take into account guidance that will be forthcoming from the Ohio Supreme Court and at least one other Ohio appellate court [and] does not acknowledge the nationwide scope of the opioid epidemic and the Opioid Lawsuits, nor the importance of federal drug regulations to those claims and to understanding the conduct of pharmaceutical distributors like Cardinal Health that could be at issue in insurance coverage litigation." *Id*. This Court disagrees.

The Magistrate Judge correctly concluded that, "because this case involves issues of developing, unsettled state law,… an Ohio declaratory judgment action would provide a better and more effective remedy." (R&R at 14, ECF No. 27.) She noted that, "where, as here, the state substantive law is undeveloped or unsettled, federal courts can and do err in applying state law." *Id.* at 13. Accordingly, Ohio's "state courts are better positioned to determine and apply the proper legal standards." *Id.* at 14. The fact that the opioid epidemic is nationwide does not change the focus on the contractual relationships between the parties are based on state insurance contract law.  Thus, this Court is not persuaded that this factor weighs in favor of exercising jurisdiction.

**D.    Balancing of Factors**

This Court agrees with the Magistrate Judge that this case presents a close call. As discussed above, this Court finds that the *Grand Trunk* factors one and two weigh in favor of exercising jurisdiction, factor three is neutral, and factors four and five weigh against exercising jurisdiction. On balance, this Court concludes that the most efficient, useful, and fair result

19

would be to decline jurisdiction and allow the case to proceed in state court. In reaching this determination, this Court too is persuaded by the novel nature of these type of claims, the lack of developed state-court guidance in this area, and the pendency of other materially-related state-court actions addressing similar contractual issues in opioid-related declaratory judgment actions.

**IV.**

For the reasons set forth above, the Court **GRANTS** Defendant's Request to File a Reply Instanter (ECF No. 30) and **OVERRULES** Defendant's Objection (ECF No. 28). This case is hereby **REMANDED**, and the Clerk is **DIRECTED** to return the case to the Franklin County Court of Common Please and close it on this Court's docket.

**IT IS SO ORDERED.**

7/28/2021                                      /s/ Edmund A. Sargus, Jr.
**DATE**                                       **EDMUND A. SARGUS, JR.**
                                               **UNITED STATES DISTRICT JUDGE**